UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BARTECA HOLDINGS LLC, d/b/a BARTACO,** | ) ) ) | **CASE NO.1:16CV1498** |
| Plaintiff, | ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| Vs. | ) ) | |
| **COASTAL TACO LLC.,** | ) ) | **OPINION AND ORDER** |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Barteca Holdings LLC.'s ("Bartaco") Amended Motion for a Temporary Restraining Order and a Preliminary Injunction (ECF # 19). For the following reasons, the Court denies Plaintiff's Motion.

According to Plaintiff's Verified Amended Complaint, Plaintiff Barteca Holdings, LLC. owns a growing chain of upscale casual restaurants called Bartaco. Bartaco's design concept "embodies a healthy, outdoor lifestyle and combines fresh, upscale street food with a coastal vibe in a relaxed environment." (Lawton dec. ¶ 5). Bartaco alleges it has invested thousands of hours and tens of millions of dollars in developing its distinctive look and feel.

In 2010, Bartaco's Creative Director, Sas Mahr-Batuz, created a design concept for

Bartaco Restaurants and the first Bartaco was opened in New York in 2011. Upon the success of the restaurant, Bartaco sought to expand and invited Rosser Capital Partners, ("RCP") a private equity firm that focuses on restaurants, to participate in evaluating investing in Bartaco. RCP invited Alton F. Doody III, ("Doody"), founder of a restaurant group that RCP had previously invested in, to participate in RCP's evaluation of Bartaco. Doody was provided confidential information on Bartaco's finances, business plans and the development of Bartaco's design. RCP invested in Bartaco with Doody participating as a passive investor. Since 2012, Bartaco has opened eight additional restaurants with plans to add three more restaurants in 2016, five in 2017 and five in 2018. As of the filing of the Complaint, Bartaco has no restaurants in Ohio or the Midwest region.

Plaintiff alleges that on May 27, 2016, Doody and Defendant Coastal Taco opened Coastal Taco in Cleveland, Ohio. Plaintiff contends Coastal Taco has duplicated virtually every meaningful aspect of Bartaco's design, including: the color scheme (blue and white) on clapboard style boards, asymmetrically displayed photographs of beach scenes, rustic woven basket style light fixtures, use of garage style door passageways, indoor and outdoor take-out windows, order cards, similar design outdoor tables, displays of citrus fruit in woven baskets, juicers made by the same company displayed on open bars, marketing materials including tokens, etched glass, business cards, etc... all with similar designs and similar menu offerings.

Plaintiff's Verified Amended Complaint alleges Trade Dress violations under Section 43(a) of the Lanham Act and Ohio Common Law, Violation of Ohio's Deceptive Trade Practices Act and Unfair Competition. All Plaintiff's claims are based on Coastal Taco's alleged trade dress infringement.

**Standard of Review**

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F. 3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F. 3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007). While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F. 2d 1223, 1229 (6th Cir. 1985)), " a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence. *See Deck v. City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc*., 404 F. 2d 256, 257 (6th Cir. 1968).

The Court may issue a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  (Fed. R. Civ. P. 65c).

Plaintiff contends it is entitled to an injunction because Bartaco's trade dress is

3

distinctive, non-functional and likely to be confused with Coastal Taco's.  Bartaco faces irreparable harm and such harm is presumed by law if there is a likelihood of confusion.

"The Lanham Act, 15 U.S.C. §§ 1051–1141n, encompasses the protection not just of wordmarks and symbols, but also of trade dress."  *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.,* 730 F.3d 494, 503 (6th Cir. 2013) citing *Wal–Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 209, 120 S.Ct. 1339, (2000).   Section 43(a) of the Lanham Act creates a "federal cause of action for infringement of marks and trade dress that have not obtained federal registration." *Tumblebus Inc. v. Cranmer,* 399 F.3d 754, 760–61 (6th Cir.2005); 15 U.S.C. § 1125(a). "Trade dress is the total image of the product, including all of its identifying characteristics such as size, shape, package, and sales techniques, which make it distinguishable from other products in the market."  *Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.,* No. 10 15174, 2013 WL 308728, at *3 (E.D. Mich. Jan. 25, 2013) *citing Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 764 n. 1, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

To succeed on a trade dress infringement claim under the Lanham Act, a plaintiff must prove:  "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir.2002).

**Distinctiveness**

"Distinctiveness of trade dress may be inherent or demonstrated by secondary meaning." *Happy's Pizza,*  2013 WL 308728, at *3 *citing Abercrombie,* 280 F.3d. at 635.

Trade dress is inherently distinctive when its "intrinsic nature serves to identify a particular source." *Id.*  It acquires secondary meaning when, " 'in the minds of the public, the primary significance of a [trade dress] is to identify the source of the product rather than the product itself.' " *Id*.  In *Abercrombie & Fitch*, the Sixth Circuit adopted the categories of distinctiveness created by the Second Circuit.  Among these categories, those marks found to be "arbitrary ('Lucky Strike cigarettes'), fanciful ('Kodak' film), or suggestive ('Tide' laundry detergent")"  are inherently distinctive.  *Id.* (citing *Abercrombie & Fitch Co., v. Hunting World, Inc.,* 537 F.2d 4, 10–11 (2d Cir.1976).   Those that are merely  descriptive or generic are not inherently distinctive. *Id.* at 636.

Here, Plaintiff alleges a protectable trade dress in its exterior and interior "visual design elements."  The "interior décor category fits awkwardly into the classifications of trade dress law, constituting either product packaging or a *'tertium quid'* akin to product packaging." *Best Cellars, Inc. v. Wine Made Simple, Inc.,* 320 F.Supp.2d 60, 70 (S.D.N.Y.2003), citing  *Wal–Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).   Both the *Best Cellars* and *Happy's Pizza* courts determined that the *Abercrombie* test applied to trade dress claims arising out of restaurant decor infringement.  The Court agrees.

According to Plaintiff, it possesses a protectable trade dress in the design elements of its restaurants.  In its Verified Amended Complaint at paragraphs 96-97, Plaintiff alleges:

> Every Bartaco restaurant uses the same distinctive trade dress, inspired by a healthy, outdoor lifestyle and combining fresh, upscale street food with a coastal vibe in a relaxed environment.
>
> 97. Bartaco's trade dress features a number of specific visual design elements, including but not limited to: (1) a blue-and-white colorblock paint scheme

executed most prominently on clapboard-style wooden boards and unfinished concrete; (2) basket-style overhead lighting fixtures; (3) non-structural interior wood pergola-style beams; (3) wire crates displaying fruit and other produce; (4) industrial-style Ra Chand brand juicers installed on the bar; (5) interior signage hand-painted in white text outlined in black on a surface presenting the appearance of unfinished boards; (6) asymmetrically-displayed photography featuring beach scenes, surfing, and outdoor living; (7) garage-door-style openings between interior and exterior dining areas; (8) outdoor tables painted white with slatted tops and indoor tables of single-piece blond wood and black metal bases with white wicker chairs; (9) round "taco tokens" of unfinished wood to offer free tacos to customers upon a return visit; (10) a "check presenter" of unfinished wood embossed with the Bartaco logo; (11) printed materials using the blue-and white color scheme and featuring distinct design features such as a square business card with the Bartaco logo in white on a blue field; (12) food served on rimmed trays, and drinks served in glassware etched with the Bartaco logo; (13) distinctively-shaped hot sauce bottles featuring the blue-and-white color scheme and stylized line drawings; (14) grid-style "order cards" on which customers write their orders and submit them to waitstaff by inserting them into a spindle on wood sauce caddies on each table; (15) a menu that features certain specific non-traditional traditional taco fillings such as fried oyster and Portobello in addition to traditional fillings such as chicken and pork; and (16) a food-truck style walk-up take-out window.

Plaintiff further alleges "The trade dress utilized in each Bartaco restaurant is identical..." (Verified Amended Complaint ¶ 101). Plaintiff reiterates that its trade dress is identical throughout its restaurants in its Motion for Temporary Restraining Order at pg. 27. Furthermore, the affidavit of Scott Lawson, Barteca's Chief Operating Officer, attests, "Each new Bartaco location is designed to achieve the distinct Bartaco look and feel."

Coastal Taco challenges Plaintiff's assertion that its restaurants exhibit an identical, protectable trade dress. Coastal Taco submits the declarations of Melissa Flaherty, Pablo Hendler, Rebekah Ausbrook, William Walsh and Angela Gott in support of its Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. Flaherty, Hendler, Ausbrook and Walsh visited Bartaco locations following the filing of Plaintiff's

Complaint.

Flaherty visited the Bartaco restaurant in Nashville, Tennessee.  She attests the Nashville location does not contain exposed plumbing, or white-painted mechanicals.  It does not present pergola style non-structural interior wood beams nor does it have umbrellas with blue canopies and wooden supports.  It further lacks wicker chairs but instead presents non-wicker café style chairs.  She further attests she was not offered a wooden token for a free taco, nor did the Nashville Bartaco offer a "five for five" cocktail deal.  Instead of a large stone fireplace, the Nashville location has a small fire pit.  Lastly, Flaherty attests the Nashville location lacks a food-truck style, walk-up and take out window.  In fact, it lacks an exterior take-out window of any kind.

Hendler attests he visited Bartaco restaurants in Port Chester, NY, Stamford, Connecticut and Westport, Connecticut.  According to Hendler, all these Bartaco establishments lack the non-structural, pergola style wood beams.  They also lack wire crates filled with fruit stacked in a highly visible location.  Instead, they store fruit in wood or ceramic bowls.  The Port Chester location lacked any hand-painted signage.  Hendler further observed that the Connecticut based locations lacked any large garage door style openings blending the indoor and outdoor spaces.  In fact, the Stamford location lacks any outdoor space at all, therefore, it lacks such trade dress features as described by Plaintiff as having a patio with white-painted tables with blue cushions and patio umbrellas with blue canopies.  While the Westport location has a patio, it has an awning instead of patio umbrellas.

Hendler attests that none of the locations he visited used wicker chairs, rather, the Connecticut restaurants used café style chairs with rounded backs while the NY restaurant

used what looked to be plastic chairs with square backs.  None of the establishments had exterior take-out windows or fireplaces.  Hendler was neither offered nor did she see an unfinished wood token for a free taco at either the NY or Stamford locations.  No "five for five" cocktail deal was offered and, instead of a square business card, he was given a menu.

Ausbrook attests she visited the Reston, Virginia Bartaco location.  The Reston Bartaco restaurant does not exhibit exposed plumbing, duct work or white-painted mechanicals.  Neither does it exhibit non-structural, pergola style wood beams.  Reston further lacks wire crates filled with fruit, stacked in a highly visible location.  Instead, some fruit is placed in wooden bowls.  Ausbrook attests she saw no indoor hand-painted signage, in fact, she saw no indoor signs of any kind.  The Reston Bartaco patio lacked blue seat cushions and umbrellas with blue canopies and wooden supports.  It had no wicker chairs, fireplace, exterior take-out window or outdoor heaters.

Walsh attests he visited three Bartaco restaurants in Atlanta, Georgia.  None of the Atlanta based Bartaco restaurants exhibit non-structural, interior wood beams in a pergola style nor did they have wicker chairs.  All three locations also lacked umbrellas with blue canopies and wooden supports and further lacked exterior food-truck style take out windows.  Walsh attests that the Inman Park and Chastain Park locations lacked take-out windows of any kind.  The West Midtown location did not have wire baskets filled with fruit nor did it have hand-painted indoor signs.  Walsh further attests he was not presented with a wooden taco token at any of the three Atlanta-based restaurants.  Both the Western Midtown and Inman Park locations lacked square business cards but presented the more traditional rectangular- shaped cards.  Walsh further attests none of the Atlanta-based Bartaco restaurants

offered or advertised the "five for five" cocktail deal and neither the West Midtown nor Chastain Park locations had outdoor heaters. Walsh also notes that all three restaurants varied in design and decor from one location to the next. One had rustic exterior features that the other two lacked. One had large wood shelving not found in the other two locations. One had a large sticker covered ice maker on the patio that the others lacked.

Coastal Taco compiled these observations into a chart comparing the differences of each of the eight Bartaco restaurants visited by the declarants to the alleged trade dress elements listed by Bartaco in its Amended Complaint. The chart was compiled by and attested to by Angela Gott, an associate at the law firm of Jones Day, Coastal Taco's counsel. (Attached as an Exhibit to this opinion). In short, the chart demonstrates that none of the Bartaco locations visited by declarants embody all of the trade dress elements listed in Plaintiff's Amended Complaint.

In *Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.,* No. 10 15174, 2013 WL 308728, at *4 (E.D. Mich. Jan. 25, 2013) , the court, on summary judgment, was presented with a trade dress claim similar to the one before this Court. Happy's restaurant alleged it had a trade dress claim based on its unique interior and exterior decor and that a competitor, Papa's Pizza, Inc. infringed Happy's trade dress. The court denied Happy's motion for partial summary judgment holding "Happy's failed to provide evidence that each Happy's restaurant uses this specific uniform theme, that other fast food restaurants do not use these elements, that customers exclusively associate these elements and menu items with Happy's, that other restaurants do not offer similar food combinations, and that all of Papa's restaurants use these elements."

Furthermore, in *Best Cellars, Inc. v. Wine Made Simple, Inc.,* 320 F. Supp. 2d 60, 72 (S.D.N.Y. 2003) the Court looked to the trade dress as a whole, not its individual elements holding, "the trade dress is the overall look of the store, consisting of a cumulation of interacting elements, and defendants do not infringe by appropriating the marketing concept, or any particular element of plaintiff's design, unless the overall dress is sufficiently similar to generate likely consumer confusion." Thus, where a competitor's decor may copy some elements of another's this alone will not constitute trade dress infringement when the trade dress owner's alleged trade dress lies in the interaction of several elements that combined create a distinctive trade dress.

Here, Bartaco's representation that "the trade dress utilized in each Bartaco restaurant is identical..." (Verified Amended Complaint ¶ 101), is belied by the observations of Coastal Taco's declarants that no Bartaco restaurant visited by them embodied all the elements of Bartaco's trade dress. In fact, at least one Bartaco location, the Atlanta West Midtown, fails to embody almost half of Bartaco's alleged trade dress elements. Thus, Bartaco fails to present uniformity and distinctiveness in its trade dress elements throughout its various establishments. Bartaco has the burden to show by clear and convincing evidence that it has a substantial likelihood of success on the merits that it has a distinctive trade dress. It has failed to meet this burden because it has not shown its restaurants embody all the elements that combined constitute its alleged trade dress.

Because a finding that Plaintiff has failed to establish by clear and convincing evidence a strong likelihood of success on the merits is fatal to motion for injunctive relief, the Court denies Plaintiff's Motion for a Temporary Restraining Order and a Preliminary

Injunction.

       IT IS SO ORDERED.

                                          s/ Christopher A. Boyko
                                          CHRISTOPHER A. BOYKO
                                          United States District Judge

Dated: August 8, 2016

| Alleged Bartaco Trade Dress Element | Stamford, CT | Westport, CT | Atlanta, GA (Chastain Park) | Atlanta, GA (Inman Park) | Atlanta, GA (West Midtown) | Port Chester, NY | Nashville, TN | Reston, VA |
|---|---|---|---|---|---|---|---|---|
| (1) A blue-and-white colorblock paint scheme executed most prominently on clapboard-style wooden boards and unfinished concrete. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (2) Basket-style overhead lighting fixtures. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (3) Non-structural interior wood pergola-style beams. | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ |
| (4) Wire crates displaying fruit and other produce. | ✗ | ✗ | ✓ | ✓ | ✗ | ✗ | ✓ | ✗ |
| (5) Industrial-style Ra Chand brand juicers installed on the bar. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (6) Interior signage hand-painted in white text outlined in black on a surface presenting the appearance of unfinished boards. | ✓ | ✓ | ✓ | ✓ | ✗ | ✗ | ✓ | ✗ |
| (7) Asymmetrically-displayed photography featuring beach scenes, surfing, and outdoor living. | ✓ | ✓ | ✗ | ✗ | ✗ | ✓ | ✓ | ✓ |
| (8) Garage-door-style openings between interior and exterior dining areas. | ✗ | ✗ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (9) Outdoor tables painted white with slatted tops and indoor tables of single-piece blond wood and black metal bases with white wicker chairs. | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ |
| (10) Round "taco tokens" of unfinished wood to offer free tacos to customers upon a return visit. | ✗ | ✓ | ✗ | ✗ | ✗ | ✗ | ✗ | ✓ |
| (11) A "check presenter" of unfinished wood embossed with the Bartaco logo. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (12) Printed materials using the blue-and-white color scheme and featuring distinct design features such as a square business card with the Bartaco logo in white on a blue field. | ✗ | ✗ | ✓ | ✗ | ✗ | ✗ | ✓ | ✓ |
| (13) Food served on rimmed trays, and drinks served in glassware etched with the Bartaco logo. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (14) Distinctively-shaped hot sauce bottles featuring the blue-and-white color scheme and stylized line drawings. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (15) Grid-style "order cards" on which customers write their orders and submit them to waitstaff by inserting them into a spindle on wood sauce caddies on each table. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (16) A menu that features certain specific non-traditional taco fillings such as fried oyster and Portobello in addition to traditional filling such as chicken and pork. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| (17) A food-truck style walk-up take-out window. | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ |
| **Uses all alleged elements?** | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ | ✗ |